SUPREME COURT. New York General Term, February, 1862. *Ingraham, Leonard* and *Clerke,* Justices.

## THE PEOPLE *v.* CHARLES NOAKES.

An order for the delivery of goods, though not on its face addressed to any person, is the subject of forgery. It is sufficient if the order is of such a character that a person can, by the use of it, be deprived of property.

Where, in an indictment for forging an order, it was charged that the prisoner's intent was to defraud the "Meriden Cutlery Company, and divers other persons to the jury unknown," it was held not to be erroneous for the court to refuse to charge the jury that the Meriden Cutlery Company could not be regarded as the subject of fraud.

Nor was it erroneous in the court to refuse to charge the jury that, if the grand jury knew, at the finding of the indictment, whom the prisoner intended to defraud, he could not be convicted of an intent to defraud persons unknown, where no evidence whatever had been given to show that the grand jury had any knowledge of that kind.

THE prisoner was indicted for forgery. The indictment was as follows .

*City and county of New York, ss:*

The jurors of the People of the State of New York, in and for the body of the said city and county of New York, upon their oath, present : That Charles Noakes, late of the First ward of the city of New York, in the county of New York aforesaid, on the thirty-first day of August, in the year of our Lord one thousand eight hundred and sixty-one, with force and arms, at the ward, city and county of New York aforesaid, feloniously did falsely make, forge and counterfeit, and cause and procure to be falsely made, forged and counterfeited, and willingly act and assist in the false making, forging and counterfeiting, a certain instrument in writing, commonly called an order, which said false, forged and counterfeited instrument is as follows, that is to say :

" Please send through bearer,

| | |
|---|---|
| 6 dozen 476 table knives, | 6 dozen 476 dessert knives, |
| 6 dozen 477 table knives, | 6 dozen 477 dessert knives, |
| 6 dozen 435 table knives, | 6 dozen 435 dessert knives. |

Charge and send bill to

f. W. J. F. DAILEY & Co.

Please give us lowest price. We will send another order."

With intent to injure and defraud the Meriden Cutlery Company, and divers other persons to the jurors aforesaid unknown, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

There was another count in the indictment for uttering and publishing the order.

The prisoner pleaded not guilty.

The issue was tried in November, 1861, in the Court of General Sessions of the city and county of New York, before JOHN H. McCUNN, City Judge, and a jury.

The district attorney, to sustain the indictment, called the following witnesses:

*William Dailey* testified that he was one of the firm of W. J. F. Dailey & Co., hardware dealers. On being shown the order described in the indictment, witness said it was not the order of his firm, but was a forgery. Witness did not know the prisoner; never saw him before his arrest.

The order was here presented.

*Joseph B. Beadle* testified that he was a hardware and fancy goods dealer in the city of New York; he also said he was agent in this city for the Meriden Cutlery Company of the State of Connecticut; that he had been in the habit of dealing with Dailey & Co.; that he had been at the place of business of the "Meriden Cutlery Company," at Meriden, in the State of Connecticut; that "Meriden Cutlery Company" is the name of the company; that it was organized in 1855. Witness said that on the 31st day of July, 1861, some unknown man came to his store and presented this said order; that, believing it was genuine, he delivered the goods mentioned upon its face; the goods sold were worth $161. Witness added, that within the next ten days after the delivery of said knives, he saw at the store of Samuel Basford several dozen of the same knives he gave upon the order; they were all of the Meriden Cutlery Company manufacture.

*Samuel Basford* testified that he knew the prisoner; that he bought thirty-six dozen knives of Meriden Cutlery Company

The People *v.* Noakes.

manufacture; the knives shown to the witness, Beadle, and seen by him, were bought from the prisoner by him only a few days before Beadle came there and saw them; he paid the prisoner $84 for the thirty-six dozen knives; the thirty-six dozen knives were of the Meriden Cutlery Company manufacture.

*Oscar Nathusius*, sworn, said he was a member of the firm of Nathusius, Ruggles & Morrison, hardware dealers; that he knew the prisoner; that the prisoner was once (about four or five years before) a clerk for his firm for about three months; that during that time he saw him write; knows his handwriting; that he also saw him write his name, at the request of witness, in the Police Court, on the day of his arrest; that he compared the writing of his name with this order, and from these facts was able to say that the order mentioned and set out in the indictment was, to the best of his knowledge and belief, in the handwriting of the prisoner. The witness was shown the order set out in the indictment, and said it was in the handwriting of the prisoner. The order was then given in evidence to the jury.

It was conceded that the prisoner had always borne a good character, and the case was closed.

The court charged the jury, and the prisoner's counsel asked the court to charge the following propositions, namely:

*First.* That the instrument set out in the indictment was not upon its face the subject of forgery.

The court refused to charge as requested, but said that the instrument was upon its face the subject of forgery.

*Second.* That the "Meriden Cutlery Company" could not be regarded as the subject of an intended fraud by the prisoner in the making or uttering this instrument.

The court refused to charge as requested, but said that the "Meriden Cutlery Company" might be properly regarded as the subject of fraud.

*Third.* That if the grand jury, at the finding of the indictment, knew, and the petit jury at trial knew, from testimony, whom the prisoner intended to defraud in the making and

uttering this instrument, then the charge in the indictment — that the prisoner intended to defraud "*divers persons to the jurors unknown*"— must be disregarded for variance from evidence.

·The court refused to charge as requested, but said that the prisoner, notwithstanding the existence of these facts, might be convicted of an intent to defraud "*divers persons to the jurors unknown*," as charged.

The prisoner's counsel excepted to each and every refusal by the court to charge each and every of the propositions as. requested, and to so much of the said charge as relates to each and all of such propositions.

The jury found the prisoner guilty, and the case was removed into this court by *certiorari.*

*S. H. Stuart,* for the prisoner.·

I. This instrument is not, upon its face, the subject of forgery, and the court erred in refusing so to charge, and in charging that it was, upon its face, a forgery.

It is submitted that this writing is neither an order, warrant, nor request for the delivery of goods:

It is not addressed to any one.

An order is the mandate from one who professes to have control over the property named, addressed to another, who appears to be possessed of the same, and who, from the face of the paper, seems to be under an obligation to obey.  The test of a written· order for the delivery of goods is that, upon its face, there appears to be a drawer; that, upon its face, there appears to be property over which he has control; that, upon its face, there appears to be a person drawn upon, to whom it must be addressed, and who, from its face, appears ·to be bound to deliver. (*See* 1 *Bishop Cr. L.,* §§ 205, 206; *Rex* v. · *Baker,* 1 *Moody,* 231; *Rex* v. *Church,* 1 *Leach,* 540–544; *Rex* v. *Mitchell,* 2 *East. P. C.,* 936; *Reg.* v. *Williams,* 2 *Car. & P.,* 51; *Rex* v. *Start,* 6 *Id.,* 106; *Reg.* v. *Thorn,* 2 *Moody,* 210; *Reg.* v. *Curry, Id.,* 218; *Reg.* v. *Roberts, Id.,* 258; *Reg.* v. *Newton, Id.,* 59; *Rex* v. *Rosencranss, Russ. & Ryan,* 161.)

The People *v.* Noakes.

The only difference between an order and a warrant for the delivery of goods is, that the first commands, and the second authorizes, the same thing to be done. In all else they are alike; the elements of their composition, and the facts necessary to their constitution, are the same. A warrant, instead of a written order, is a written authority from one to another, to do the thing mentioned. Both the authorizor and the authorized must be named in the writing to bind the one and justify the other in the transaction. A bill of exchange or a letter of credit, and instruments of like character, are warrants; they may also, under certain intrinsic circumstances, be orders.

The only difference between an order, a warrant and a request, is, that while the one orders and the other authorizes, the third solicits. It, like them, must be addressed to some one; there must be a party requested as well as a requesting party. There must be some one to whom application is made, as well as some one applying for the favor prayed; each is equally essential to the perfection of the instrument. The absence of the one is as fatal to its legal existence as that of the other.

"Forgery is the false making of an instrument which purports, on its face, to be good and valid for the purpose for which it was created." (1 *Hawkins, ch.* 70, § 7; 2 *East P. C., ch.* 19, § 45; 1 *Leach,* 407, 547; 9 *Wend. R., Shall's Case.*)

"A false token," says Chief Justice SAVAGE, in the case of Gates (13 *Wend. R.,* 311), "is a false writing in the name of another, so framed as to obtain more credit than the mere assertion of the party defrauding."

II. The court erred in refusing to charge, "that the 'Meriden Cutlery Company' could not be regarded as the subject of an-intended fraud by the prisoner, in forging or uttering the instrument set forth in the indictments."

An indictment in a case of forgery with intent to defraud must charge the intent to be to defraud either a natural person or some creature of or being known to the law, which has a legal existence corresponding to a natural person.

There is a case in 27 *Vermont R.,* 277, where a prisoner

(Meade) was convicted of obstructing an engine of a "railroad company," which was reversed upon the ground that the indictment did not aver that the company was a corporation.

Henry Wilber (4 *Park. Cr. R.*, 19) was indicted under an "act for the protection of Gas Light Companies," for defrauding a Gas Light Company. The court (Judge BROWN) held that even here it must appear that the company defrauded was a corporation, in order to convict the defendant.

In the case of *The People* v. *Chadwick* (2 *Park. Cr. R.*, 163), indicted for having counterfeit bank notes in possession, with intent to utter and cheat the Commercial Bank, the court say, in its opinion, among other things, that if there was no corporation shown to exist, it could not be said that the prisoner intended the fraud charged.

III. The court erred in refusing to charge that, "if the grand jury, at the time of finding the indictment, and the petit jury, at the trial of the same, knew from testimony who was to be defrauded in the making and uttering this instrument, then the charge in the indictment that the prisoner intended to 'cheat and defraud certain persons to the jurors unknown,' must be disregarded for variance from the evidence."

In the case of *The King* v. *Walker* (3 *Campb.*, 264), the principal felon was described as a person to the jurors unknown. It appeared that he was known to the grand jury at the time they indicted, and the receiver was acquitted for the variance.

The same rule was observed, under like circumstances, in the case of *Rex* v. *Robinson* (1 *Holt*, 595).

It is said (2. *Hawk.*, 319), that the indictment must be certain as to the party, if known against whom the offense was committed, that the prisoner may be informed as well who he is charged with having injured, as what the offense preferred against him is.

An error in setting forth the name of the injured party is much more serious than an error in setting forth the name of the offender himself, as the former is proper ground for acquittal, in case of variance in the evidence; while the

latter can only be taken advantage of by abatement. (*Whart. Cr. L.*, 71.)

Where the name of an injured party cannot be ascertained, as where the body of a murdered man is found, who cannot be identified, the indictment may allege the name to be to the jurors unknown. (2 *Hale*, 181.)

To support a description of " unknown," it must appear, said Mr. Sergeant TALFOURD, in the case of *The Queen* v. *Strand* (*Car. & Kir.*, 187), from the evidence at the trial, that the name of the party injured could not have been known to the grand jury.

IV. The verdict ought to be set aside for that the prisoner has been convicted of two several crimes — forging and uttering — each a distinct, independent, substantive felony.

*Nelson J. Waterbury* (District Attorney), for the People.

*By the Court*, INGRAHAM, P. J.    The exceptions relied upon in this case were to the judge's charge. The prisoner was indicted for forgery of an order for the delivery of goods. The prisoner's counsel requested the court to charge the jury that the instrument set out in the indictment was not upon its face the subject of forgery.

All the questions as to this order and the nature of the offense, except the one which is based upon the want of a direction in the order, were raised and decided in *Harris* v. *The People* (9 *Barb. R.*, 664), and the court there held that such an order was within the provisions of § 33, 2 *R. S.*, 673.

In *The People* v. *Stearns* (21 *Wend. R.*, 409), COWEN, J., says: "Every instrument in writing which may affect property — for example, an order, a letter, or a mere license — is made the subject of a felonious forgery."

The construction which was given to the crime of forgery, as defined in the thirty-third section, is so sweeping as to cover almost any writing by which another person may be in any way deprived of property, and the cases cited are conclusive on this question. Nor do I think the objection fatal that the order has no special direction. Under the English statute such

direction seems to have been considered necessary; but that statute is not as broad as ours, and the same necessity for the application of the rule does not apply. It is sufficient if the order is of such a character that another can, by the use of it, be deprived of property. If so, then it may be the subject of forgery.

The next objection is, that the indictment charges the intent of the prisoner to have been to defraud the "Meriden Cutlery Company, and divers other persons to the jury unknown," and that the court refused to charge that the Meriden Cutlery Company could not be regarded as the subject of fraud.

This point was also the subject of consideration in the case of *Stearns*, and in that case in the Court of Errors (23 *Wend.*, 634), the Chancellor says: "The indictment charges that the forged order was made with intent to defraud the Bank of Kentucky, and divers other persons to the jurors unknown. If there is no corporation of that name, it necessarily follows that the indictment is broad enough to reach the unknown individuals who constituted the company."

So in this case, if there is no such corporation as the Meriden Cutlery Company, then the indictment is broad enough to reach the unknown individuals who constitute the company.

The case of *De Bow* (1 *Denio R.*, 9), does not conflict with these decisions, because in that case the indictment charged an intent to defraud the Bank of Nassau, and no other person, although it does conflict with the former decision of the same court in *The People .v. Peabody* (25 *Wend. R.*, 472), where it was held that it was immaterial whether the bank really had a legal existence, if the forged instrument *purported* to be issued by an institution authorized for such a purpose, &c.

The third exception was to the refusal of the judge to charge the jury, that if the grand jury knew, at the finding of the indictment, whom the prisoner intended to defraud, he could not be convicted of an intent to defraud persons unknown.

It is sufficient for this objection to say that there was no evidence to show that the grand jury had any knowledge of that kind. A judge is never required to submit to the jury a

question which has no evidence in the case to support it. On the contrary, it would be error to do so. (*The People* v. *Rynders*, 12 *Wend. R.*, 432.)

We think the conviction in this case was right, and that the court below should proceed to sentence the prisoner. ·

The case must be remitted to the court below, and that court is advised to pass sentence upon the prisoner.

